The question presented in this case is whether the United States can prosecute the defendant under the Federal Hate Crimes Prevention Act for his bias-motivated assault of his co-worker, where the assault interfered with the co-worker's ongoing preparation of goods for interstate shipment at an Amazon warehouse. The heart of this case is a constitutional question of whether application of that hate crime statute to the facts of this case is within Congress's commerce class power. The constitutional question is before this court on an as-applied challenge. So this court doesn't need to decide what other applications of the statute may or may not be permissible. It only needs to decide whether this application can go forward. You need to just talk to us about Morrison. At least me, I shouldn't say us, but I'm just thinking Morrison, that case just seems to be begging us to address it. Sure. So there's a few distinctions between this case and Morrison. First, Morrison concerned a facial challenge rather than an as-applied challenge. And second, and most importantly, the statute in Morrison, the Violence Against Women Act's private civil remedy, did not have a jurisdictional element. So there is no link on the face of the statute between the prohibited conduct, gender-motivated violence, and any commercial or economic activity. Well, you know, when you think about the Commerce Clause connection here, the, and you're right, the post-Morrison and Lopez Congress's written statutes like this one that have a specific jurisdictional prong in them. But almost all of our cases, if not all of them, including around the country, when they've addressed these types of questions, they've looked at these various Lopez factors, not just the jurisdictional link. And they've gone into those, I think, uniformly and discussed how the Commerce Clause link matches up, say in the dog fighting and cop fighting cases. You've got pretty powerful evidence of a connection with interstate commerce. It wipes out the entire poultry flock in a particular state. And here you've got two guys fighting at a warehouse. And there seems to be a fairly similar case. Yeah, so I think the critical case to look at in this regard may be the Virginia Tech case that ultimately became Morrison. Judge Ludig's en banc majority opinion in that case that was subsequently affirmed. And there Judge Ludig discusses the difference between statutes that are on their face regulating economic conduct and or, on the one hand, statutes that either regulate economic conduct or have a connection on their face to economic conduct, where the United States has to plead and prove beyond a reasonable doubt a connection in each case between the prohibited conduct and economic activity. And then on the other hand, cases like Lopez and Morrison, where there is no connection on the face of the statute, and there's also no link required to be proven in each individual case. In those circumstances, in the Lopez and Morrison circumstances, where there's no facial economic connection, what the courts do is that they go searching through the legislative history, searching through common sense, intuitive determinations, to determine whether there is, in fact, a connection between the conduct that Congress is trying to prohibit and some commercial or economic activity. Here the court just doesn't need to do that because the United States has to prove that in each individual case a connection between the bias-motivated assault and some sort of commercial or economic element. And so then the critical set of cases here are the federal arson cases, where this court has... This is Judge Shea. Let me ask you a question. I understand this as applied, but I just want to explore your theory for just a little bit. What is the fact that satisfies the jurisdictional hook that all the products here were to be shipped interstate? No, Your Honor. The critical fact here is that the victim was engaged in ongoing commercial or economic activity at the time of the assault, which tracks... Wait, wait, wait. But what if he was merely working in the section of Amazon that dealt with in-state packing? Would you still have your hook? Yes. You would? Yes. And why is that? So as a statutory matter, the statute requires only interference with ongoing commercial or economic activity in which the victim is engaged. There's no interstate component to it. And then as a constitutional matter, this court has consistently held that interstate economic activities can be regulated when Congress has a rational basis to conclude that in the aggregate, those activities will affect economic or interstate economic or commercial activity. Why would that be true in this case, though? Where is that determination of finding that it would affect or necessarily would affect interstate commerce if it was a separate part of the plant that only dealt with mailing within the state? Yes, Your Honor. The issue is not a specific finding that interstate mailing... I know that, but I'm just asking your theory. So what isn't covered then? What isn't covered? What isn't covered under your theory? What isn't federalized under your theory? If, for example, the victim were not engaged in any sort of economic or commercial activity at all when he was assaulted. So in other words, he was completely unemployed? Well, if he were sitting at home, certainly that wouldn't be covered. But it's your theory that if he's working at all, anywhere, under any circumstances, and that's enough of a jurisdictional hook. Well, I'll give you two answers to that. First of all, we have two different theories. Yeah, well, just give me the right one. Just give me what you think is the right one. So our theory is... We have two alternative theories here. One is that interference with No, no, no. Forget the employment right, Title VII, and all that. I'm talking about commerce now. If he's employed anywhere, doing anything, that's enough of a jurisdictional hook. If the assault interferes with whatever economic or commercial work he was doing at the time. Even if that work is absolutely, purely intrastate. Yes, Your Honor, and that flows from the arson cases where this court has held that a daycare center that serves purely the congregants of a church, which are purely intrastate individuals, when that gets burned down by a defendant, that's still federal arson because it's part of the larger commercial market. Let me ask you this. Would your theory hold up? I'm just trying to find out because it appears to me the court has said something has to limit federalization of every crime, number one. Number two, what if because the people didn't like each other, and they stopped going to lunch together, and they didn't cross state lines to eat at a cafeteria right across the state line. Would that be a jurisdictional hook? I'm sorry, so it's a question if they were assaulted out of one person? There was an argument, and one person shoved the other. Then hard feelings, hard feelings, and so they no longer went to lunch together as a group of eight or ten people, which they normally, they worked right on the state line, they normally crossed and ate at a little cafeteria, and they no longer did that. Would that failure of friendship and failure to go eat lunch together reduce revenues of a cafe across state lines? Would that be a jurisdictional hook for you? I would have to understand a little bit more about the facts of that case. I already told you, I told you the facts. There's a push, they get an argument about who ought to win the Super Bowl. One pushes the other, and then so the group of ten take hardened sides, they each start siding up with different people, and they no longer as a group of ten go together to eat lunch across state lines at a nearby cafeteria. Is that failure to go across state lines and eat together, is that a jurisdictional hook on commerce? It certainly wouldn't fall within the jurisdictional element of this statute that we're arguing about here, about interference with commercial or economic activity in which the victim is engaged at the time of the assault. So it might fall under some other theory of commercial connections, which is about travel across state lines or the like, but it wouldn't fall within this theory of the case. Let me ask one other question. Go ahead, Judge Wynn. You ask your question. I'm going to shift gears. You go first. Thank you, Judge. I'm just reflecting on this case and thinking about the Arson Statute case in which the Supreme Court has held that property that's burned, even though it's totally instated, it affects the interstate company, it comes under there. And the other cases, including the old weak cases in Lopez and how they all tie in here. And I don't know if we focus on this or not, but I'm wondering is it viable in this instance for you to approach this as though this is one of the worst set of facts you could just have. This defendant just came in and he just outright said, I did this because this person was homosexual. Happened to do it in an Amazon place. What is the import of doing that in a major corporation like Amazon that if you do a crime of that type of nature, given its impact and its whole in terms of people and it happens within your company, does that affect that could happen to that company which has international and national import effect? Is that an economic, I know it's indirect, but does it have that kind of connectivity that then say you did this in a place that is really hurting the business for doing it? Yes, Your Honor. Do you have to bring evidence to that effect or do we just take it on a case by case basis or is it as a matter of course? Well, certainly at this stage, at the motion to dismiss the indictment stage, there's no evidence other than what we've proffered. But I think your question gets precisely at our second theory as it relates to the way in which assaults in the workplace interfere with the employment rights of individuals, especially at these sort of major multinational companies. This is why Congress can pass Title VII to regulate discrimination in a workplace like Amazon. And for the same reason why you can't be calling your co-workers names at a workplace like Amazon, you also can't be assaulting your co-worker based on animus basis. Did he choose to do it or he just happened to, on the allegations as we look at it at this stage, did he choose Amazon or could it have happened anywhere? Well, in this particular situation, both the defendant and the victim were employees at Amazon. So they came into contact in the course of their work. And that's how the defendant targeted the victim. So from that perspective, the corporation brought them together because they were both there together and in that situation they know. I'm just trying to follow this in terms of where it goes. I think the way to think about it is that the defendant's assault of the victim affected the employment relationship and the employment circumstances between the corporation and the victim. I don't know if there was a vendor that, we'll call it almost Amazon, but it only has 16 employees, so it's over the 15 person limit. Or it could be 14, so it's under. Exact same thing happens. But they're simply a vendor that in turn delivers to Amazon. Is there jurisdiction? I think that poses a tougher question in this case, obviously, because this case has a much larger... That's why I asked the question. Because even in an as-applied challenge, these cases have lots of ramifications and there are very few prosecutions for these. And as Judge Wynn indicated, you don't have the best facts in this case. So thinking of, just try this hypothetical. It's a little different, but say you have a bar. So there's interstate traffic through there. And the dishwasher comes out from the back and for the same reasons in this case, punches out the bartender. Would you say in that circumstance there's jurisdiction? Your Honor, I see that I'm out of time, but I'm... Yeah, as long as we're talking, you can talk. Okay, great. Yes, there is jurisdiction in that case. If the bartender were working on making his drinks and he got punched and could no longer make his drinks, that's interference with ongoing commercial or economic activity. In order to mix his drinks, he's got to have clean glasses. So if the dishwasher's in the back and there's two of them and they're washing the glasses and one dishwasher punches out the other one for the same reasons, do you have jurisdiction then? Again, I think that under both theories, that's ongoing interference with ongoing commercial or economic activity, and that interferes with the other dishwasher's employment rights. So I think on both of our theories, we would say that there is jurisdiction in that case. But again, none of these questions need to really be reached here. I'll admit that because you've got... This is a pretty serious issue. How far can you federalize what are, other than the hate crimes part, just garden variety crimes? Two guys get in a fight in a warehouse, or they get in a fight in the back of a restaurant. I mean, that's a fairly extensive reach of federal government power. Your Honor, but in each of those cases, the government has to prove the nexus to commerce. It's not a free-floating federal interest to criminalize any sort of assault. It has to be linked in some way to some commercial or economic activity. You're stating with some certainty, and this is a different kind of question. I'm just trying to figure this out. When you make the claim about how far the commerce clause nexus goes, how is that determined? Do you decide that? Is that a Civil Rights Division determination? Is that an Attorney General guidance on that? How do you decide that? I'm just asking. I do not know. Is it just left up to the person like you who's arguing the case to make that argument, how far that commerce clause argument goes? Do you have a working paper? How do you decide that? Your Honor, there are two limitations on how this works. One is the statutory language itself provides... No, I know that, but people can look at the statute and see differently. I'm talking about the argument that you make about how far it goes. How is that decided? In other words, how is the Justice Department positioned in the case? Who decides the parameters of that argument? I just don't know. In this case, the parameters of that argument are decided by the Solicitor General if we are appellants. If we're appellees, it's decided within the Civil Rights Division if we prevail. Who made the decision on the argument that you're making today? In other words, this is clearly the law, is clearly the reach of the commerce clause. I'm not talking about the employment type cases, but of the commerce clause. That is something that is a policy decision, or you get to make it, or the Solicitor General approves your argument, or what? So some of that decision was made when the choice to indict was made, right? When the Justice Department decided to indict. And at that point, both the Civil Rights Division is involved in deciding whether to indict. And because of the structure of this specific statute, the Attorney General actually has to certify that a prosecution has a sufficient federal nexus. So at that point, both the Assistant Attorney General for Civil Rights and the Attorney General made that decision. And then subsequently, at the appeal stage, the Solicitor General makes a decision about the specific arguments that are going to be presented on appeal. Would the Attorney General, because there is a certification, would the Attorney General be free at any time to send us a notice that the appeal is being dropped in this case? I don't know the answer to that question, Your Honor. Certainly, since we are the appellant, the Justice Department is the appellant, the appellant generally can move to dismiss the appeal under the federal rules. So if ordered, that decision could be made. Thank you. Thank you. That's all I have. All our questions over the time limit are not counted against you on rebuttals. Thank God, all your time. All right, Ms. Haynes. Thank you, Your Honor. Good morning, Your Honors. In this case, what the government seeks to do is to take those pre-established pathways for Congress to regulate under the Commerce Clause and basically blow a hole through that, establishing a jumbo highway. I think one of you asked about whether or not basically they could regulate anything in the workplace. And under this statute, they could. But it, in fact, goes further because the Supreme Court in United States v. Reich talked about what is economic activity. And included in that is consumption of commodities. And so were the government able to say you interfered with an individual's consumption of commodities, then that, too, could be regulated under this statute. And clearly we have, I think what makes this case really difficult, aside from the fact everybody acknowledges these are the worst facts you could see in terms of a defendant who comes in and absolutely just admits it. So that's not the question of this case. It's a commerce question. And it's one that we've been grappling with in every kind of setting, the federalization of criminal laws. But we have really, really gone there in so many other areas, so many. There must be thousands of federal crimes out there, from RICO to carjacking and drugs and everything in this world. And, you know, you tie it in this word economic. And once you hit an economic, it slides on into the Commerce Clause. Everybody seems to not have much problem if you are carjacking a car right in the middle of the state and had never even gone out of the state. Oh, that's good enough. You can deal with that. Or a drug-type transaction that happens, and the person may have never even walked out the borders of the state. Nobody around did it. But when we deal in this context of it, here what we're dealing with, if we're going to go the economic route, and I'm trying to decide does it fit within the economic curtailment of it, when you do it to employees within a major, no question Amazon is national, international, no question about that, and you're doing it in this company, and you choose to do a hate crime within there, what is the difference from all these other cases that are out there? There is a significant difference between this statute and the other statutes. And the primary difference is that those statutes regulate, first of all, economic activity. They regulate one of the three ways. Do we care more for property than we do for human conduct? Why do we care more about whether you hijack a car? But if you deliberately injure or hurt someone because they happen to be homosexual, because they happen to be a particular race, oh, that's not federal. I don't – I'm trying to understand that. Correct. And you don't have to – because that's just the state of the law. It's not your position to do it. You argue in your case, but I just – that one puzzles me. I believe that the court is asking perhaps the wrong question. Because under the Commerce Clause – Why do we care more about economic than we do what happens to human beings? Is that the right question? The right question in a Commerce Clause statute has to be then, is this an economically focused statute? And what the government wishes this court to believe and what is easy to fall into is that we are to look to what is the harm or the evil the statute seeks to prevent. That is what the Supreme Court instructed in Torres v. Lynch. And we look at what was Congress getting at. And in this case, what they were getting at was violent crime. That's what the legislative history indicates, that they wanted to protect individuals, that the jurisdictional prongs were only limiting principles. Further – And if that harm is economic, it's commerce. No. At that point, no. It is not – it still is not an economic crime because what Congress was trying to legislate is not an economic activity. And I'll give you a perfect example. I want – I engage in fighting. I assault someone. And the reason I assault them is because I don't like them. As compared to I assault someone, I engage in a fight because I'm part of a fight club that people come to to bet on. I'm paid for it. That is – and Congress wants to legislate. What if you do it in an airplane going across North Carolina? Well, one of the other – Does that affect – I know the Federal Aviation – but take out the other statutes. If that fact alone, you're in an aircraft, a private plane, going across the state of North Carolina, does that affect commerce? Under prior jurisdiction, it would, but it would also fall under a different jurisdictional prong of this statute because the offense occurred by the defendant's use of instrumentality of commerce. And what you don't have here are one of those other well-established hooks. This is not a channel of interstate commerce. It's not an instrumentality of interstate commerce. The government tries to muddy the waters by not focusing on whether or not there was a substantial impact to interstate commerce. And one of the ways they do that is to say this is about – there's some nexus or some connection to interstate commerce because the victim was engaged in commerce at the time. What I would first point out is that the Supreme Court and this court in Brazincala, which was the Virginia Tech rape case, did not say we can have any connection to commerce, but they said there must be, this court, a meaningful connection. Is arsenal always an economic crime? Well, it is because the object is to destroy property which is in commerce. And so what you – And I got the point. I'm just thinking, and when I smile, I'm only thinking if the object is a human being and you commit a hate crime against them, not interstate commerce, but if the object is a building or something you say is interstate commerce, affects commerce. If the person is in commerce, they would be sufficiently engaged in and related to interstate commerce to fall within this statute. I'm just dealing with the rationale behind the whole basis. Again, it's not your – I'm not attacking what you're saying. It's just the manner in which we've approached this and how we deal with a situation in which the kind of harm that you inflict on a building or property, interstate commerce. But if it is on a human being with hate or intent, whatever, not interstate. Well, it can be. Because what Jones said in the – But under these circumstances, you say not be. And this is the circumstance where there is no question. See, here's a set of facts. There's no question why this person did this. He did it absolutely because he said, I did it because this person was homosexual. Just don't like them, I did it. That was it. So there's no question it happened. But under these circumstances, cannot be because it doesn't affect economic activity, whereas he had done the same thing to a building, when I say done the same thing, threw a bomb into a building or just went up there and took a sledgehammer and hit a building, interstate commerce. But not to – I mean, Your Honor, if you read the Jones opinion, what the court did there is said, it's not all buildings. The buildings themselves, which are the object of what you're trying to protect is destruction of buildings, must be in commerce. And so if he were in commerce, absolutely, Congress could legislate it. But in this case – How would he be in commerce? If he were driving the truck that takes the product across state lines, if he was on the train taking the product. The term – But you don't have to take drugs across the state for it to be in state commerce. Right. Because – And those drugs are like that person. The person can go across. The drugs can go across. But we just assume drugs go. That's what they do. Well, human beings go across the lines more than drugs do. Because under the Lopez framework, the court must first start with the question, is this an economic statute? And when you're talking about the Controlled Substance Act, the courts have said, of course, this regulates commerce. And the problem is that the government wants to say the inclusion of a jurisdiction – It's a collectible commodity that moves interstate. Yes. Drugs. Correct. And that is also a regulatory scheme which gets at many different things, whereas this statute is a standalone statute which has no other connection to any other conduct. Let's change the facts slightly from what we have in this case and move them out of the warehouse. And so they're on the loading dock. The truck driver who's going to drive to another distribution center in another state  Is that enough of a connection to interstate commerce to satisfy the Commerce Clause? Your Honor, I think likely it would be because the truck driver himself is in commerce. And so there are these very narrow and specific categories under which commerce can legislate. And what the Supreme Court has said is when you look at the – part of the problem here is that the jurisdictional element, as interpreted by the government, is broader than that which is permitted to be regulated under the Commerce Clause. And so the jurisdictional prong must be sufficiently narrow to separate out what – that activity that can be legislated by under the Commerce Clause from that which cannot be. And so because, as this Court points out, all these different examples of conduct that would fall under it, there is – it is too broad because it captures any economic conduct that the victim is engaged at the time. And so what they really ask the Court to do is create some new category, which is if we can establish any type of connection, basically what they want you to do is say, if we put in a jurisdictional prong that has some connection, some bare reference to an economic act. Based on that, it makes it an economic statute, which then allows us to essentially regulate and it expands where Congress – the areas in which Congress can legislate. This Court in Brazincala talked about the type of connection that's necessary. And they talked about it in being similar to that in – Well, those are statutes that do not have a jurisdictional provision like this statute. That's correct, but they still talked about – when they first looked at whether or not it was an economic statute, they said how – what does it speak to and what is it – what is its connection to economics? And it must be both a substantive connection and – so that is that it has to substantially speak to the economic act. It was happenstance that this event occurred in the workplace. And in fact, the Sixth Circuit found that the causation must be – it must be a but-for causation. So the only reason that the defendant can act is based on his hate animus, as opposed to anything else. So if he didn't like the guy because the guy took his job and because he also was gay, then you would not have a cause of action under this statute. And so it, in fact, removes all economic motivation from the statute. And motivation matters, as you can see from, for example, my example with fighting. It would also be, for example, with robbery. Your motivation is to take funds, to remove funds from someone else. That's an economic motivation. And so I think this Court has said, and also the Supreme Court, that you have to look at whether or not it's a meaningful connection. And the connection suggested by the government is far broader than any other type of connection falling under any other statute. In fact, this is the only – you can Westlaw search this statutory jurisdictional hook. It's the only language – the only time Congress has used this language. It's never been used before, suggesting that this isn't a common way in which they obtain Commerce Clause jurisdiction. Just briefly, because the government has also then focused on this idea that Title VII permits Congress to generally regulate in the employment context. But that is not what Title VII does. Title VII, and if you look at the basis as to why Congress was permitted to regulate in that area, is that employers are engaged in economic activity when they hire employees. And the relationship between an employer and an employee naturally affects commerce. Talk to me about the Taylor case. And, Your Honor, if you could – to me, the – Look at theft of a drug in which you don't even steal the drug. Steal, get some jewelry and all other kinds of stuff. It says Hobbs Act. Yes. Commerce Clause is satisfied. I think it has that jurisdictional element that Judge Agee alluded to. Right. But the difference – Isn't that a little overreaching, would you not say? I mean – The Hobbs Act? How in the world – not just the Hobbs Act, but how in the world, if you just attempt to do something, you steal jewelry within – totally within the state. And it's an attempt crime. And yet, we went out of our way – at least the court did. We, in terms of the Supreme Court, went out of the way, virtually, almost unanimous decision, says commerce. I'm glad I don't have to make that argument. But there are differences between – there are significant differences between the Hobbs Act and this statute. The primary one being is that the Hobbs Act, the thrust, the single goal of that act, is to protect the engines of commerce, businesses. And so, the fact that it also has a jurisdictional prong is an additional basis. It's an additional protection. But it is substantially – The act is reyes of the crime in that circumstance. Correct. Exactly. That's my point, Judge Agee. Thank you. Exactly. This judge said, I'm thinking about the questions and the answers that I'm hearing. What do you make of the certification requirement in this case? I mean, I know what the certification says. But that certification, there has to be a determination by the Attorney General before we even get to talk about whether or not there's a commerce clause link. Correct? That's correct. There is a certification requirement. What do you make of that? I think it does speak to Congress' stated intent to have this statute only apply to a very few number of cases. And, in fact, it has. There's only been seven prosecutions in as many years. Unfortunately, the language that they chose, I think, is being interpreted more broadly than should be by the government. And so what should be, and what we've argued, is that the court, just like the court did in Jones, should further narrow that statutory language to require that an individual who is assaulted be in commerce. That is, must literally be in commerce so as to bring it within the confines of the commerce clause. And that's what, in fact, they said in the legislative history, is we intend to only go as broadly as the commerce clause allows us. But when you look at the three areas that Congress can legislate under, this is broader than those. And so our first suggestion would be that it would be appropriate to first narrow the language of the statute. And under that narrowing language, Mr. Hill's conduct just doesn't fall under. I just can't remember right now. Was your client charged with state crime of some kind? He initially was charged. And he also, a supervised release violation was brought against him to which he admitted. I don't care about that. Oh, you mean a federal supervised release violation because of the state crime? Yes, sir. I got you. But he was charged with assault? He was charged with assault. Yes, assault. Okay. And so in my last two minutes, the only point I wanted to make was that when you look at Title VII in the employment context, that, first of all, only regulates truly employer activity because it's employer activity which has a substantial impact on interstate commerce. Wasn't this employee packing? Were they packing packages at the time? One was packing and one was sorting. And where were the packages going? They were destined to go to various places in Virginia and outside of Virginia. So they were destined to go interstate. So they were both packing packages at the time this happened. That's going interstate. That's correct. But that's – But it is, I mean, what the court then has to ask yourself is, is it a direct – whether there's a direct link between the conduct that Congress intends to legislate and the impact. But if he drives a truck and the truck doesn't even have to go across the line, you're just driving a truck, 18-wheeler, would that be interstate commerce? Yes, because a vehicle is an instrumentality of commerce and the truck driver is also in commerce. But here it's a two-step dance. Because the truck actually goes across the line and can go over there, but what if what you have is going across the line, you have a package, and you're packing it to go across the line too. In other words, you're going – does that not affect interstate commerce? Well, the court is falling into the trap, I think, that the Supreme Court and even other courts have recognized is the problem with this type of legislation, is that, yes, everything we do eventually affects commerce. Well, we've already been there enough, as I said, with the truck cases and other things. We've tagged the title economic, but we can make robberies and everything else a part of it. I got that. I'm just dealing with these facts. I'm not going to try to deal with every case that comes around. I don't know if this was going to exist if they aren't packaged. But I'm saying if they're packaging packages and those packages are going across the line, I've got to differentiate that than if you're doing some other – in this instance, whether we're dealing with the truck business, but what else out there would constitute interstate commerce for purposes of economic activity? Well, that would be the three Lopez categories, so instrumentalities, things in commerce. And the problem here is the effect must be a substantial effect. It must be both direct and substantive. And so what you're describing is then an indirect process. Which is the causation problem that Justice Cardozo described in Schecter-Paltry. Correct, correct. Eighty years ago. Right. This is the only statute in which the government tries to regulate violent crime, tax on a jurisdictional element, and then suggests that simply putting in a jurisdictional element allows them basically carte blanche to legislate anything. I mean, that's really what they're asking you to do. And we would suggest that that would be inappropriate. Thank you, Your Honors. Thank you very much. Mr. Swarup, you have some rebuttal time. Thank you, Your Honors. I just want to start with this idea that we're somehow trying to regulate a new category. And I think the best place to start here is the text of the statute and the facts of this case. So the text of the statute says that bias-motivated assaults that interfere with commercial or economic activity in which the victim is engaged at the time of the assault is prohibited. And then, again, we have here, and that neatly fits the facts of this case. We have the victim. He's actively packaging goods for interstate shipment when he's assaulted by the defendant. He can no longer do so. That's the interference. So this is not a broader category or connection than what this Court has previously recognized. And I think the arson cases are on all fours here. So in those cases, this Court has held that where a building that is actively used for some commercial purpose is burned down, then Congress can regulate that conduct. All you have to do is graft that holding onto the facts of this case. When an individual is actively engaged in commercial. You're at the end line of the economic impact of the burning of a building. The actus reus of the crime of arson, or the actus reus in the Hobbs Act, are economic motives and with a direct economic effect. Here you've moved at least one step back from that. So I don't think that's quite right insofar as arson is not inherently economic. This was another idea that's come up. The Supreme Court has specifically said that. The motivation can be non-economic. But the direct impact at the time of the arson is economic. Neither the motivation nor the direct impact is economic. So in terms of the direct impact, the Court has said that when you set fire. If you burn a building down, I think that's a fairly direct economic impact. The Supreme Court has said that it's not. When you burn down an owner-occupied residence, that's not. The Supreme Court has held that that's not economic. But everything but owner-occupied is. That's right, because if it's engaged in some sort of commercial activity. So there does have to be some connection to commerce there, just as there has to be some connection to commerce here. This statute is just like the arson statute. And then again, going to the motivation point, this Court has consistently held that you don't need to have an economic motive to be convicted of federal arson. You could be in a family feud, which was the case in Cristobal. And in the Gibbert case, the Court specifically had that note. But Cristobal is where they blew up trucks. They did. But the rationale for why that fell within Congress' arson. Trucks are instrumentalities of interstate commerce. Absolutely. We have that here. Absolutely. But the rationale in Cristobal was that those trucks were owned by a business. And that was the reason why the Court struck it down. Which made them an instrumentality of interstate commerce. And you don't have an instrumentality of interstate commerce here. In any event, there's any number of cases in the Hobbs Act and the arson cases where the defendant is not motivated by any commercial activity. The Gibbert case is on point for that. The other point that I wanted to make here is that the jurisdictional element is actually important. It connects the prohibited conduct to commercial or economic activity directly. And this goes to your causation point, Judge Agee. In the Morrison and Lopez context, the Supreme Court rejected the idea that you can't use a but-for theory of causation. That but-for having guns in school zones, essentially that caused students to learn less well, then subsequently they became less productive workers, and therefore there was some effect on the economy. That's a long but-for causational chain that the Supreme Court said was not okay. In contrast here, the economic impact is direct, obvious, and foreseeable from when the defendant assaults the victim. There's a direct and obvious link to commerce because the victim can no longer package goods for shipment. Can you cite us any case where the Commerce Clause hook has been satisfied solely by the jurisdictional provision? Yes. In the federal arson context, arson is not an inherently economic crime because owner-occupied residents are not economic. So the jurisdictional element that the building has to be used for some commercial purpose is what makes the arson statute constitutional, and that's the holding of Jones v. United States. And then I just wanted to mention that this idea that the individual has to be in commerce, I think that that's a statutory interpretation argument that just doesn't work because the other jurisdictional elements of the statute cover that conduct. So that would turn, for one, into total surplusage, and I just don't think that that was the intent of Congress or what the plain text of the statute says. I also wanted to just highlight that the statute has to be read in conjunction with its jurisdictional element. So you can't just say that this is not an economic offense because that reads out one of the elements of the offense that the government has to plead and prove beyond a reasonable doubt in each case, which is a direct connection to commerce. And again, the Lopez case is very helpful here because there the court struck down the Gun-Free School Zones Act and said that in part why it struck it down is because it didn't have a jurisdictional element. Congress came back and said, if you possess a gun in a school zone and that gun has traveled in interstate commerce, then that's a federal crime. And that, with the jurisdictional element, has been upheld by the court. So I think that demonstrates the limitations that a jurisdictional element can place on an offense and make it constitutional. And that's another example, Judge Agee, of a jurisdictional element that in and of itself makes the statute constitutional because the very statute had been found unconstitutional. Let me ask that inverse question. Is there a statute that has that jurisdictional hook that's been declared unconstitutional? Thank you. No, there is no statute with a jurisdictional element that has been found unconstitutional and no application of such a statute that is found unconstitutional. And that's precisely because, in all of those cases, the government has to prove that link, to prove that element. And I finally just wanted to highlight the Taylor case, which stands for the proposition that when Congress has the power to regulate commercial economic activities, such as the packaging of goods for interstate shipment, Congress also has the power to regulate interference with that activity. And so if I can just conclude by saying that this is an exceedingly easy case. There are difficult questions under this statute. This is just not one of them. Here we have statutory text that's pretty narrow in terms of requiring ongoing commercial activity. That is met here by the facts of the case, and if you apply the facts of the arson cases to this case, you'll conclude that reversal is the correct outcome. Thank you. Thank you very much. We appreciate the arguments of counsel, and we're going to come down and reconcile, and I'd ask the clerk to adjourn court. This honorable court stands adjourned, signing die. God save the United States and this honorable court.
judges: Dennis W. Shedd, G. Steven Agee, James A. Wynn, Jr.